MATTER OF S—

In VISA PETITION Proceedings

A-12084150

*Decided by Board September 6, 1961*

Nonquota status—Spouse of U.S. citizen—Presumption of validity of marriage negatived by proof of prior existing marriage.

Presumption of validity of second marriage is rebutted, and visa petition to accord nonquota status is denied, where the record discloses that beneficiary contracted a first marriage seven months prior to his marriage to petitioner, that he made no efforts to obtain a dissolution of his first marriage, and there is no evidence other than own statements that his first wife deserted him and that he has been unable to locate her.

## BEFORE THE BOARD

DISCUSSION: This is an appeal from the denial of a petition for the issuance of a nonquota immigrant visa. The District Director found that the beneficiary has been previously married, has not presented proof of the termination of his prior marriage, and, therefore, the marriage of the petitioner to the beneficiary is not valid. Petitioner appeals to this Board.

Petitioner is 28 years of age, a native of Greece who acquired United States citizenship through naturalization in the United States District Court at New York on August 15, 1960. The beneficiary is 26 years of age, born in Greece. He entered the United States on or about December 22, 1959, at Detroit, Michigan, as a visitor in possession of a British passport to visit relatives or friends in Chicago. The beneficiary immediately became employed by a friend as a "grill man" in a restaurant. Immigration records show that beneficiary was a landed immigrant in Canada and was residing in Toronto prior to his 1959 entry. Following his December 1959 entry, beneficiary was apprehended by immigration authorities and was given voluntary departure either in February or April 1960. He remained in Canada two weeks and again returned to the United States.

The petitioner married beneficiary in New York in a civil ceremony on September 16, 1960, and in a religious ceremony on October 16, 1960. Counsel and petitioner's husband allege that petitioner is now pregnant; that the parties are living together; that petitioner is

513

not employed and is entirely dependent upon the beneficiary for her support. The beneficiary, in a sworn statement before an immigrant inspector at New York on April 13, 1961, denied at first that he had been married prior to his marriage to the petitioner. Upon being warned again of the penalties of perjury, he stated that he was married in Chicago in a civil ceremony at or near the end of March 1960; that the girl he married was named Cathy; that he could not remember her last name and that she stayed with him only one day and then disappeared. After being shown his "Affidavit for a Marriage License," application executed in Chicago on February 16, 1960, and Exhibit A, a sworn statement taken in Chicago on January 26, 1960, he then admitted that he knew Katherine for two months and had been dating her before they were married. He said that he married her because he loved her; that he knew she was a United States citizen; that they lived together in a hotel "as man and wife" for about one week. He then denied that the marriage was ever consummated. He stated that the last time he saw Katherine was around April 15th, which means they were together after their marriage for at least two months. He continued to deny that the marriage was consummated, stating that he feared sexual relations because he had no money and no job and did not want a family. This testimony is in conflict with his sworn affidavit, Exhibit A, wherein he stated that he was working for "Nick's Snacks," owned by his friend, N—H—, for $90 a week.

Beneficiary applied for section 245 adjustment of status in New York in February 1961. (See file, memorandum to District Director, Chicago, February 24, 1961, from Acting Chief, Applications Section.) Beneficiary admits that his marriage to Katherine was never legally terminated; that he made no effort to terminate his marriage because he does not consider "in his thoughts" that he is married to Katherine. He says that he could not find her after she left him, and that he knew it would cost money to obtain a divorce through an attorney. His "Affidavit," application for a marriage license, executed on March 28, 1961, prior to his marriage to petitioner, states that he had not previously been married. It is alleged that petitioner did not know the beneficiary had been married.

Counsel rests his appeal entirely on the presumption of the validity of a ceremonial marriage in the State of New York. Counsel relies on cases where a prior spouse had disappeared and been long gone, or was believed to be dead, or cites cases where the second ceremonial marriage is attacked by outside parties (e.g., wills and estate matters). There was an obligation on beneficiary to inform his first wife as to his whereabouts, and to use all possible diligence to ascertain the facts as to the existence or death of his first wife before entering into a second marriage. In the State of New York

there is a procedure under the Domestic Relations Law for obtaining a ruling of dissolution of marriage against the deserting spouse. The law indulges in presumptions from the necessities of the case in the absence of sufficient evidence to establish a fact to be proved. *In re Meehin's Estate*, 135 N.Y.S. 723 (1912).

The prior decisions of the Board cited by counsel in his oral argument do not constitute precedent in the instant case. *Matter of F—*, 5—163 (B.I.A., 1953), concerns an alien who had been living in the United States for 28 years in what was found to be a valid, common-law relationship. The Board found further that he had made serious efforts on two occasions to locate his first wife in England. We ordered that deportation of the alien be suspended on the basis of his long-standing, well-established domestic relationship with his second wife.

In the second case cited by counsel, *Matters of S—*, 7—469 (B.I.A., 1957); we refused to give the alien the benefit of the presumption of the validity of the second marriage, because the facts clearly showed lack of good faith on his part. Although that case arose in California, and we rested primarily on California cases, the same rule would control in the instant case.

The visa petition is a request for a privilege, and the petitioner must establish that the relationship exists upon which she relies. The presumption of the validity of the second marriage can be negatived by proper proof that the prior marriage exists and has not been terminated. There is no question but that beneficiary was married to a United States citizen named K—W— in Chicago on February 16, 1960. There is no evidence in this record that beneficiary's first wife deserted him, or that his first marriage was not consummated, or that he has been unable to locate his first wife and does not know her whereabouts, except his own statements. His testimony is full of inconsistencies, and he has shown himself to be an unreliable witness in every aspect of his sworn testimony, including his affidavit for a marriage license in New York.

A—S— admitted, after being confronted with the record, that he made no effort to obtain a dissolution of his first marriage. We find that his marriage seven months later to petitioner was not entered into in good faith. A visa petition will not be issued on the basis of this clearly bigamous marriage. The appeal will be dismissed.

ORDER: It is ordered that the appeal be and is hereby dismissed.